Thomas K. Doyle, OSB No. 972511
doylet@bennetthartman.com
Richard B. Myers, OSB No. 131264
myersr@bennetthartman.com
Bennett, Hartman, Morris & Kaplan, LLP
210 SW Morrison Street, Suite 500
Portland, Oregon 97204-3149
Telephone: (503) 227-4600
Facsimile: (503) 248-6800
Of Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **EILEEN FOX-QUAMME**, **LISA HESS**, **MARY REDFIELD**, **O.W.**, a minor child, **LEIGH ANN CHAPMAN**, and **JEFF CLARK**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**HEALTH NET HEALTH PLAN OF OREGON, INC.**, an Oregon corporation, and **AMERICAN SPECIALTY HEALTH GROUP, INC.**, a California corporation,<br><br>Defendants. | Case No. _____<br><br>CLASS ACTION ALLEGATION COMPLAINT<br><br>Action under the Employment Retirement Security Act (29 U.S.C. §§ 1001-1461) and the Declaratory Judgment Act (28 U.S.C. §§ 2201-2202)<br><br>DEMAND FOR JURY TRIAL |

SUMMARY STATEMENT

1.      Plaintiffs are medical practitioners and participants in health benefit plans offered

and administered by Health Net Health Plan of Oregon, Inc., and American Specialty Health

Page 1 – COMPLAINT

Group, Inc. Plaintiffs allege that Defendants discriminated against Oregon licensed naturopathic physicians who acted within the scope of their license in providing medical care to participants in Defendants' health benefit plans. Plaintiffs bring this civil action to recover benefits owed to plan participants under the terms of their health benefit plans, to clarify and enforce the rights of plan participants, and to seek a declaratory judgment that Defendants' discriminatory practices against NDs are unlawful.

## JURISDICTION AND VENUE

2. Jurisdiction lies pursuant to 28 U.S.C. § 1331 because this matter involves a civil action arising under the laws of the United States and pertaining to federal questions.

3. Venue is proper pursuant to 28 U.S.C. § 1391 because the claims alleged in this complaint are based upon events and omissions which have substantially occurred in this District.

## PARTIES

4. Health Net Health Plan of Oregon, Inc., ("Health Net") is an Oregon corporation in the business of providing health insurance, with its principal place of business at 13221 Southwest Sixty-Eighth Parkway, Suite 200, Tigard, Oregon 97223.

5. American Specialty Health Group, Inc., ("ASH") is a California corporation in the business of administering health insurance plans, with its principal place of business at 10221 Wateridge Circle, San Diego, California 92121.

6. Eileen Fox-Quamme ("Fox-Quamme") was, and is now, a citizen of the United States and resident of the State of Oregon. At all material times herein, Fox-Quamme was enrolled in a health benefit plan offered and administered by Health Net and ASH, effective January 1, 2014.

7. Lisa Hess ("Hess") was, and is now, a citizen of the United States and resident of

the State of Oregon. At all material times herein, Hess was enrolled in a health benefit plan offered and administered by Health Net and ASH, effective January 1, 2014.

8.     Mary Redfield ("Redfield") was, and is now, a citizen of the United States and resident of the State of Oregon. At all material times herein, Redfield was enrolled in a health benefit plan offered and administered by Health Net and ASH, effective January 1, 2014.

9.     O.W. is a minor child and brings this action by and through his mother, Erika Weisensee. O.W. and Erika Weisensee were, and are now, citizens of the United States and residents of the State of Oregon. At all material times herein, O.W. was enrolled in a health benefit plan offered and administered by Health Net and ASH, effective January 1, 2014.

10.    Leigh Ann Chapman ("Chapman") was, and is now, a citizen of the United States and resident of the State of Oregon. At all material times herein, Chapman provided medical care under Defendants' health benefit plans as an in-network Oregon licensed naturopathic physician.

11.    Jeff Clark ("Clark") was, and is now, a citizen of the United States and resident of the State of Oregon. At all material times herein, Clark provided medical care under Defendants' health benefit plans as an in-network Oregon licensed naturopathic physician.

## FACTS COMMON TO ALL CLAIMS

### *A. Overview of Licensed Naturopathic Medicine in Oregon*

12.    Naturopathic medicine has been a distinct discipline of primary health care in America for over a century. It combines centuries-old therapies with contemporary advances in biomedical and diagnostic sciences covering all aspects of health, from prenatal to geriatric care.

13.    Naturopathic medicine is guided by six principles: first, do no harm; identify the cause; treat the whole person; support the body's innate natural ability to heal; promote prevention; and engage patients in the essential responsibilities of self-care.

14.     Since 1928, the Oregon Board of Naturopathic Medicine ("OBNM") has licensed naturopathic physicians in Oregon. The Oregon legislature has defined their scope of practice under ORS Chapter 685, and OBNM has adopted rules for licensure, discipline, and continuing education under OAR Chapter 850.

15.     OBNM administers a licensing examination for eligible candidates. In order to be eligible for an Oregon license, a naturopathic physician ("ND") must graduate with a Doctorate in Naturopathic Medicine from one of seven colleges accredited by the Council on Naturopathic Medical Education and recognized by OBNM. Coursework typically consists of four years post-graduate study in conventional medicine and natural therapies.

16.     In Oregon, the scope of practice for NDs includes, but is not limited to, diagnosing and treating disease, performing physical exams and preventative care, providing diagnostic labs and imaging (x-rays, MRIs, etc.), coordinating hospital care and referring to specialists as needed, prescribing all natural and pharmaceutical drugs needed in a primary care setting, performing minor surgery, providing prenatal, intrapartum and postpartum care, and providing nutritional, lifestyle, and psychological counseling as needed in the practice of general medicine.

17.     Numerous studies have shown NDs to be effective at treating a wide range of ailments, preventing disease, providing cost-effective care, and improving overall life satisfaction.

### B. Overview of ACA Non-Discrimination Provision

18.     In 2010, Congress passed the Patient Protection and Affordable Care Act ("ACA"), with the goal of improving the accessibility, quality, and affordability of health care.

19.     With the passage of the ACA, Congress imposed new coverage requirements on health benefit plans covered by the Employee Retirement Income Security Act of 1974 ("ERISA"). Specifically, under 29 U.S.C. § 1185d, participants in ERISA-covered health benefit

plans are entitled to ACA coverage requirements and may enforce those requirements by using the ERISA enforcement scheme.

20.     Among the ACA coverage requirements is a mandate for non-discriminatory health care under 42 U.S.C. § 300gg–5. This requirement prohibits covered health benefit plans from discriminating against health care providers if those providers act within the scope of their license or certification.

### C. Defendants' Discriminatory Practices

21.     At all material times herein, the health benefit plans (collectively, "the Plans") of Fox-Quamme, Hess, Redfield, and O.W. contained an annual limit on the number of reimbursable ND office visits. Defendants did not impose similar limits on office visits to other medical practitioners providing commensurate services.

22.     At all material times herein, the Plans required an ND to complete a medical necessity review form whenever a participant visited the ND more than five times in a year for general medical care. If the participant was a minor child, the Plans required an ND to complete a medical necessity review form after the first visit. Defendants did not impose a similar requirement for a medical necessity form on other medical practitioners providing commensurate services.

23.     At all material times herein, the Plans capped each participant's annual reimbursable use of ND medical care at $1,500 or less. Defendants did not impose a similar cap on reimbursements to other medical practitioners providing commensurate services.

24.     At all material times herein, the Plans did not cover certain types of medical care performed by NDs within the scope of their license, including treatment of various ICD-9 diagnoses, in-office laboratory testing, ordering of out-of-office laboratory tests and diagnostic imaging, and services provided under certain CPT codes. Defendants did not impose similar

coverage limits on other medical practitioners providing commensurate services.

25.     At all material times herein, Defendants reimbursed NDs at discriminatory rates. Defendants' discriminatory reimbursement rates for NDs were based on credential type rather than objective quality or performance measures.

### D. Plaintiffs' Exhaustion of Remedies

26.     On or about November 4, 2014, Fox-Quamme received notice of a denial of coverage for services performed by an ND within the scope of their license. Fox-Quamme timely appealed the denial of coverage by submitting a grievance to Health Net in accordance with the grievance and appeals section of her health benefit plan.

27.     On or about November 19, 2014, Hess received notice of a denial of coverage for services performed by an ND within the scope of their license. Hess timely appealed the denial of coverage by submitting a grievance to Health Net in accordance with the grievance and appeals section of her health benefit plan.

28.     On or about December 2, 2014, Redfield received notice of a denial of coverage for services performed by an ND within the scope of their license. Redfield timely appealed the denial of coverage by submitting a grievance to Health Net in accordance with the grievance and appeals section of her health benefit plan.

29.     On or about December 17, 2014, O.W. received notice of a denial of coverage for services performed by an ND within the scope of their license. O.W. timely appealed the denial of coverage by submitting a grievance to Health Net in accordance with the grievance and appeals section of her health benefit plan.

30.     On or about March 13, 2015, Health Net responded to Fox-Quamme's denial of coverage appeal by issuing a final determination with the following explanation: "American

Specialty Health (ASH) has responded to our inquiry and we have been advised that the above listed claim was processed in accordance to your plan benefits at the time of service. We were also advised that preventative care is not a covered benefit under the ASH at this time. In addition, it was recommended this claim should be reviewed for processing under your medical benefit." To date, Health Net and ASH have not provided payment to the ND for medical services provided or otherwise taken action to reverse the denial of coverage.

   31. On or about March 20, 2015, Health Net responded to Redfield's denial of coverage appeal by issuing a final determination with the following explanation: "[T]here was an administrative issue . . . [and the claim] was denied in error. The claim has been reprocessed and payment to the practitioner was issued at the contract rate . . ." To date, Health Net and ASH have not provided full payment to the ND at a non-discriminatory reimbursement rate.

   32. On or about April 6, 2015, Health Net responded to Hess' denial of coverage appeal by issuing a final determination with the following explanation: "[T]he above listed claim was improperly denied, as the practitioner did obtain the required approval for the date of service in question. The claim has been reprocessed to reflect the obtained approval; however the claim has now been denied, since you met your yearly benefit maximum . . ." To date, Health Net and ASH have not provided payment to the ND for medical services provided or otherwise taken action to reverse the denial of coverage.

   33. On or about April 8, 2015, Health Net responded to O.W.'s denial of coverage appeal by issuing a final determination with the following explanation: "Health Net's Appeals and Grievance Department reviewed your request with our Claims Department, and learned that the above-referenced claim was incorrectly denied . . . . Therefore, the above-referenced claim has been reprocessed . . ." To date, Health Net and ASH have not provided full payment to the ND at a

non-discriminatory reimbursement rate.

34. Fox-Quamme, Hess, Redfield, and O.W. have exhausted all remedies afforded them under the terms of the Plans. Any further exhaustion of their remedies would be futile given the discriminatory terms of the Plans and given Defendants' discriminatory practices set forth above.

## CLASS ACTION ALLEGATIONS

35. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs Fox-Quamme, Hess, Redfield, and O.W. seek to have this action maintained as a class comprised of all enrollees in Defendants' benefit plans established by an employer engaged in commerce ("the Class").

36. Plaintiffs' claims meet the prerequisite of numerosity under Rule 23(a)(1) of the Federal Rules of Civil Procedure because there are several thousand persons in the Class and joinder of all of them is impracticable.

37. Plaintiffs' claims meet the prerequisite of commonality under Rule 23(a)(2) of the Federal Rules of Civil Procedure because Plaintiffs' claims raise questions of law and fact common to the Class, including but not limited to:

   a. Whether Defendants discriminated against NDs with respect to participation under the Plans or coverage of services provided under the Plans;

   b. Whether Defendants' varying reimbursement rates for NDs were based on credential type rather than objective quality or performance measures; and

   c. Whether participants in the Plans are entitled to relief under 29 U.S.C. § 1132 for violations of 42 U.S.C. § 300gg–5.

38. Plaintiffs' claims meet the prerequisite of typicality under Rule 23(a)(3) of the Federal Rules of Civil Procedure because Plaintiffs' claims and the claims of members of the Class are substantially similar in that they arise from Defendants' standard and uniform provider reimbursement policy. Plaintiffs have no interests adverse to other members of the Class.

39. Plaintiffs' claims meet the prerequisite of adequacy of representation under Rule 23 (a)(4) of the Federal Rules of Civil Procedure because Plaintiffs share the same interests as members of the Class and have retained the undersigned counsel who is competent and experienced in complex class actions.

40. Plaintiffs' proposed class action is of a type allowable under Rule 23(b)(3) because the questions of law and fact common to the Class predominate over questions affecting individual members of the Class. A class action is a superior method to adjudicate those claims because the expense and burden required to pursue this litigation will likely exceed the damages suffered by any one member of the Class. Moreover, some members of the Class may yet be unaware as to the reimbursement standards of their health benefit plan, and then face several months of delay and expense in order to realize the legal questions already raised by Plaintiffs in this action.

FIRST CLAIM FOR RELIEF

29 U.S.C. § 1132(a)(1)(B)

(Recovery of Benefits, Enforcement of Terms, and Clarification of Terms)

(Against All Defendants)

41. Plaintiffs re-allege and incorporate paragraphs 1 through 40 above.

42. The facts set forth above establish that Defendants violated 42 U.S.C. § 300gg–5 by discriminating against NDs with respect to participation under the Plans or coverage of services provided under the Plans.

43.     Defendants' discriminatory practices have resulted in reduced benefits to Plaintiffs and members of the Class, including denied services and reduced access to medical care.

44.     Pursuant to 29 U.S.C. § 1132(a)(1)(B), Fox-Quamme, Hess, Redfield, and O.W., as well as members of the Class, are entitled to recover benefits owed under the terms of the Plans, to enforce their rights under the terms of the Plans, and to clarify rights to future benefits under the terms of the Plans.

45.     Pursuant to 29 U.S.C. § 1132(g)(1), Fox-Quamme, Hess, Redfield, and O.W., as well as members of the Class, are entitled to an award of reasonable attorney fees and costs incurred in bringing this action.

SECOND CLAIM FOR RELIEF

29 U.S.C. § 1132(a)(3)

(Injunction and Equitable Relief)

(Against All Defendants)

46.     Plaintiffs re-allege and incorporate paragraphs 1 through 40 above.

47.     The facts set forth above establish that Defendants violated 42 U.S.C. § 300gg–5 by discriminating against NDs with respect to participation under the Plans or coverage of services provided under the Plans.

48.     As a result of its discriminatory practices, Defendants have retained funds that should have been reimbursed to NDs, and, in some cases, reimbursed to Fox-Quamme, Hess, Redfield, and O.W., as well as members of the Class, for out-of-pocket expenses. Defendants have also profited from reduced access to medical care caused by Defendants' discriminatory practices.

49.     Unless this Court enjoins its discriminatory practices, Defendants will continue to violate 42 U.S.C. § 300gg–5 by discriminating against NDs with respect to participation under the

Plans or coverage of services provided under the Plans.

50. Pursuant to 29 U.S.C. § 1132(a)(3)(B), Fox-Quamme, Hess, Redfield, and O.W., as well as members of the Class, are entitled to equitable relief for Defendants' discriminatory practices, including an injunction prohibiting Defendant from discriminating against NDs with respect to participation under the Plans or coverage of services provided under the Plans.

51. Pursuant to 29 U.S.C. § 1132(g)(1), Fox-Quamme, Hess, Redfield, and O.W., as well as members of the Class, are entitled to an award of reasonable attorney fees and costs incurred in bringing this action.

## THIRD CLAIM FOR RELIEF

28 U.S.C. § 2201

(Declaratory Judgment)

(Against All Defendants)

52. Plaintiffs re-allege and incorporate paragraphs 1 through 34 above.

53. The facts set forth above establish that Defendants violated 42 U.S.C. § 300gg–5 by discriminating against NDs with respect to participation under the Plans or coverage of services provided under the Plans.

54. Unless this Court resolves the controversy by declaring the rights of the parties, Defendants will continue its discriminatory practices.

55. Pursuant to 29 U.S.C. § 2201, Plaintiffs seek a declaration by this Court that Defendants cannot discriminate against NDs with respect to participation under the Plans or coverage of services provided under the Plans

## DEMAND FOR JURY TRIAL

56. Plaintiffs hereby request a jury trial on all triable claims and issues herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on their own behalf, and on behalf of the Class, pray for judgment against Defendants, and each of them, as follows:

1. On Plaintiffs' FIRST CLAIM FOR RELIEF alleging violations of ERISA:

    a. A finding that Defendants violated 42 U.S.C. § 300gg–5;

    b. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, certification of a class comprised of all enrollees in Defendants' benefit plans established by an employer engaged in commerce;

    c. Pursuant to 29 U.S.C. § 1132(a)(1)(B), an order awarding compensation to Plaintiffs and members of the Class for Defendants' discrimination against NDs that denied or restricted access to medical care;

    d. Pursuant to 29 U.S.C. § 1132(a)(1)(B), an order clarifying that Plaintiffs and members of the Class are entitled to non-discriminatory coverage of medical care provided by NDs; and

    e. Pursuant to 29 U.S.C. § 1132(g)(1), an order awarding reasonable attorney fees and costs incurred in bringing this action.

2. On Plaintiffs' SECOND CLAIM FOR RELIEF alleging violations of ERISA:

    a. A finding that Defendants violated 42 U.S.C. § 300gg–5;

    b. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, certification of a class comprised of all enrollees in Defendants' benefit plans established by an employer engaged in commerce;

    c. Pursuant to 29 U.S.C. § 1132(a)(3)(A), an order enjoining Defendants from discriminating against NDs with respect to participation under the Plans or

        coverage of services provided under the Plans;

    d. Pursuant to 29 U.S.C. § 1132(a)(3)(B), an order awarding equitable relief to redress Defendants' discrimination against NDs, including, but not limited to, disgorgement, restitution, and unjust enrichment; and

    e. Pursuant to 29 U.S.C. § 1132(g)(1), an order awarding reasonable attorney fees and costs incurred in bringing this action.

3. On Plaintiffs' THIRD CLAIM FOR RELIEF seeking a declaratory judgment:

    a. Pursuant to 28 U.S.C. § 2201, a declaration that Defendants cannot discriminate against NDs with respect to participation under the Plans or coverage of services provided under the Plans, and that any variation of reimbursement rates among credential types must be based on objective quality or performance measures.

4. Such further relief in favor of Plaintiffs as this Court deems appropriate.

DATED this 7th day of July, 2015.

        BENNETT, HARTMAN, MORRIS & KAPLAN, LLP

        s/  *Thomas K. Doyle*

        Thomas K. Doyle, OSB No. 972511
        doylet@bennetthartman.com
        Richard B. Myers, OSB No. 131264
        myersr@bennetthartman.com
        Telephone: (503) 227-4600
        Facsimile: (503) 248-6800
        Of Attorneys for Plaintiffs