Stevan D. Phillips, *Pro Hac Vice*
Brad S. Daniels, OSB No. 025178
Reed W. Morgan, OSB No. 140664
stevan.phillips@stoel.com
brad.daniels@stoel.com
reed.morgan@stoel.com
STOEL RIVES LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR 97204
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

Attorneys for Defendant
Health Net Health Plan of Oregon, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| EILEEN FOX-QUAMME, LISA HESS, MARY REDFIELD, O.W., a minor child, LEIGH ANN CHAPMAN, and JEFF CLARK, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>HEALTH NET HEALTH PLAN OF OREGON, INC., an Oregon corporation, and AMERICAN SPECIALTY HEALTH GROUP, INC., a California corporation,<br><br>    Defendants. | Case No.: 3:15-cv-01248-BR<br><br>**HEALTH NET HEALTH PLAN OF OREGON, INC.'S MOTION TO DISMISS CLASS ACTION ALLEGATION COMPLAINT** |

HEALTH NET'S MOTION TO DISMISS CLASS ACTION ALLEGATION
COMPLAINT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ iii

MOTION.............................................................................................................. 1

I.      INTRODUCTION ...................................................................................... 2

II.     FACTUAL BACKGROUND ..................................................................... 4

        A.      The ACA and Section 2706 ............................................................ 4

        B.      Oregon HB 3301 (Effective January 1, 2016) .............................. 5

        C.      The Complaint ................................................................................ 6

                1.      Plaintiffs' Claims of Unlawful Discrimination and Claims...... 6

                2.      Plaintiffs' Allegations of Injury ............................................ 7

III.    LEGAL STANDARDS .............................................................................. 8

        A.      Federal Rule of Civil Procedure 12(b)(1) ..................................... 8

        B.      Federal Rule of Civil Procedure 12(b)(6) ..................................... 9

        C.      Federal Rule of Civil Procedure 12(b)(7) ..................................... 9

IV.     ARGUMENT.............................................................................................. 10

        A.      Individual Plaintiffs' First Claim Under Section 502(a)(1)(B) Should Be
                Dismissed ........................................................................................ 10

                1.      Individual Plaintiffs Lack Article III Standing ..................... 10

                2.      Plaintiffs Fail to State a Claim Under Controlling Supreme Court
                        Case Law...................................................................................... 11

        B.      Individual Plaintiffs' Second Claim Under Section 502(a)(3) Should Be
                Dismissed ........................................................................................ 13

                1.      Plaintiffs Lack Standing to Obtain Injunctive Relief............... 14

Page i    -    HEALTH NET'S MOTION TO DISMISS CLASS ACTION ALLEGATION
                COMPLAINT

# TABLE OF CONTENTS

**Page**

2.   Plaintiffs Are Not Entitled to Other Equitable Relief Under Their Second Claim ................................................................................. 15

3.   Plaintiffs Failed to Join Necessary Party ................................................. 17

C.   Plaintiffs' Third Claim Under the Declaratory Judgment Act Should Be Dismissed ................................................................................. 20

1.   Plaintiffs Fail to State a Claim Under the Declaratory Judgment Act ............................................................................................. 20

2.   Provider Plaintiffs Lack Statutory Standing to Assert Claims Under ERISA ................................................................................. 23

3.   Provider Plaintiffs' Allegations Are Insufficient to State a Claim .......... 24

V.   CONCLUSION ................................................................................. 24

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Alexander v. Sandoval,*
532 U.S. 275 (2001)..................................................................................................21

*Armstrong v. Exceptional Child Ctr., Inc.,*
135 S. Ct. 1378 (2015)............................................................................................21

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..................................................................................................9

*Baltzer v. Raleigh & Augusta R. Co.,*
115 U.S. 634 (1885)................................................................................................15

*Bellanger v. Health Plan of Nev., Inc.,*
814 F. Supp. 914 (D. Nev. 1992)............................................................................14

*Bradford v. Union Bank of Tenn.,*
13 How. 57, 14 L. Ed. 49 (1852)............................................................................15

*C&E Servs., Inc. of Wash. v. Dist. of Columbia Water & Sewer Auth.,*
310 F.3d 197 (D.C. Cir. 2002)...........................................................................22, 23

*Cattie v. Wal-Mart Stores, Inc.,*
504 F. Supp. 2d 939 (S.D. Cal. 2007)....................................................................14

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
598 F.3d 1115 (9th Cir. 2010)..................................................................................8

*CIGNA Corp. v. Amara,*
131 S. Ct. 1866 (2011).................................................................................. passim

*Curtiss-Wright Corp. v. Schoonejongen,*
514 U.S. 73 (1995)..................................................................................................20

*Dominion Pathology Labs., P.C. v. Anthem Health Plans of Va., Inc.,*
No. 2:15cv152, 2015 WL 3830931 (E.D. Va. June 19, 2015)............................5, 21

*Frank C. Gaides, Inc. v. Provident Life & Accident Ins. Co.,*
No. CV-95-1273 (CPS), 1996 WL 497085 (E.D.N.Y. Aug. 26, 1996)..................19

# TABLE OF AUTHORITIES

**Page**

*Gabriel v. Alaska Elec. Pension Fund,*
    773 F.3d 945 (9th Cir. 2014) ...................................................16

*Gest v. Bradbury,*
    443 F.3d 1177 (9th Cir. 2006) ...............................................14

*Great-W. Life & Annuity Ins. Co. v. Knudson,*
    534 U.S. 204 (2002).................................................................17

*Hearne v. Marine Ins. Co.,*
    20 Wall. 488, 22 L. Ed. 395 (1874) ......................................15

*Herzberger v. Standard Ins. Co.,*
    205 F.3d 327 (7th Cir. 2000) .................................................18

*Hollingsworth v. Perry,*
    133 S. Ct. 2652 (2013)...........................................................11

*Horvath v. Keystone Health Plan E., Inc.,*
    333 F.3d 450 (3d Cir. 2003)............................................10, 17

*Jensen v. Miller,*
    280 Or. 225, 570 P.2d 375 (1977) .........................................16

*Johnson v. Parker Hughes Clinics,*
    No. Civ. 04–4130 PAM/RLE, 2005 WL 102968 (D. Minn. Jan. 13, 2005)............................22

*Lomayaktewa v. Hathaway,*
    520 F.2d 1324 (9th Cir. 1975) ...............................................20

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992).................................................................10

*Maya v. Centex Corp.,*
    658 F.3d 1060 (9th Cir. 2011) ............................................9, 11

*Mayfield v. United States,*
    599 F.3d 964 (9th Cir. 2010) .................................................14

*Mylan Pharms., Inc. v. Thompson,*
    268 F.3d 1323 (Fed. Cir. 2001).............................................22

Page iv  -  HEALTH NET'S MOTION TO DISMISS CLASS ACTION ALLEGATION
          COMPLAINT

# TABLE OF AUTHORITIES

**Page**

*Paiute–Shoshone Indians of the Bishop Cmty. of the Bishop Colony v. City of Los Angeles,*
637 F.3d 993 (9th Cir. 2011) ......................................................................18

*Paulsen v. CNF Inc.,*
559 F.3d 1061 (9th Cir. 2009) ......................................................................9

*Romero v. Allstate Ins. Co.,*
1 F. Supp. 3d 319 (E.D. Pa. 2014) ..............................................................12

*Schilling v. Rogers,*
363 U.S. 666 (1960)..............................................................................21, 22

*Shelly Oil Co. v. Phillips Petroleum Co.,*
339 U.S. 667 (1950)....................................................................................21

*Skinner v. Northrop Grumman Ret. Plan B,*
673 F.3d 1162 (9th Cir. 2012) ....................................................................16

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.,*
770 F.3d 1282 (9th Cir. 2014) ........................................................10, 13, 23

*Sprague v. Gen. Motors Corp.,*
133 F.3d 388 (6th Cir. 1998) ......................................................................19

*Sprewell v. Golden State Warriors,*
266 F.3d 979 (9th Cir. 2001) ........................................................................9

*Tex. Med. Ass'n v. Aetna Life Ins. Co.,*
80 F.3d 153 (5th Cir. 1996) ........................................................................22

*Variety Corp. v. Howe,*
516 U.S. 489 (1996)....................................................................................13

*Warren Pearl Constr. Corp. v. Guardian Life Ins. Co. of Am.,*
639 F. Supp. 2d 371 (S.D.N.Y. 2009)..........................................................21

*Whitmore v. Arkansas,*
495 U.S. 149 (1990)....................................................................................14

# TABLE OF AUTHORITIES

**Page**

*Yellowstone County v. Pease,*
   96 F.3d 1169 (9th Cir. 1996) ....................................................................18

**Statutes**

29 U.S.C. § 1002(1) ....................................................................................18

29 U.S.C. § 1002(16)(B) .............................................................................19

29 U.S.C. § 1132(a) ...............................................................................21, 23

29 U.S.C. § 1132(a)(1)-(9) ..........................................................................23

29 U.S.C. § 1132(a)(1)(B) ..................................................................... passim

29 U.S.C. § 1132(a)(3) ......................................................................... passim

29 U.S.C. § 1185d ..............................................................................5, 21, 23

42 U.S.C. § 300gg-5 .....................................................................................4

42 U.S.C. § 300gg-5(a) ......................................................................... passim

42 U.S.C. § 300gg-22 ...............................................................................5, 21

Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* ......................... passim

Employment Retirement Income Security Act ...................................... passim

FDCA ...........................................................................................................22

HIPAA ...................................................................................................21, 22

Patient Protection and Affordable Care Act .......................................... passim

Public Health Service Act ..........................................................................2, 4

Service Contract Act ....................................................................................22

**TABLE OF AUTHORITIES**

**Page**

**Rules**

Fed. R. Civ. P. 8 ......................................................................................................9

Fed. R. Civ. P. 9(b) .................................................................................................17

Fed. R. Civ. P. 12(b)(1) .......................................................................................1, 8

Fed. R. Civ. P. 12(b)(6) .......................................................................................1, 9

Fed. R. Civ. P. 12(b)(7) .................................................................................1, 9, 17

Fed. R. Civ. P. 19 .................................................................................................9, 18

Fed. R. Civ. P. 19(a) ........................................................................................18, 20

Fed. R. Civ. P. 19(a)(1) ..........................................................................................18

**Constitutional Provisions**

U.S. Const. Art. III ....................................................................................... passim

U.S. Const. Art. III, § 2, cl. 1 ..................................................................................10

**Other Authorities**

76 C.J.S. *Reformation of Instruments* § 84, Westlaw (database updated June 2015)....................20

1 Story §§ 152–154 ...................................................................................................15

4 Pomeroy § 1375 ...................................................................................................15

FAQs About Affordable Care Act Implementation (May 26, 2015),
    https://www.cms.gov/CCIIO/Resources/Fact-Sheets-and-
    FAQs/Downloads/ACA-FAQs-Part-XXVII-MOOP-2706-FINAL.pdf ..................................5

J. Eaton, *Handbook of Equity Jurisprudence* § 306 (1901)................................................15

Oregon House Bill 3301 .......................................................................................4, 5, 15

## TABLE OF AUTHORITIES

**Page**

Oregon House Bill 3301, § 2(1) (2015) ..................................................................5

Oregon House Bill 3301, § 2(2) ............................................................................5

## RULE 7-1(a) CERTIFICATION

Undersigned counsel certifies that he has conferred with Plaintiffs' counsel regarding the relief requested by this Motion. Plaintiffs' counsel confirmed that Plaintiffs oppose this Motion.

## MOTION

Defendant Health Net Health Plan of Oregon, Inc. ("Health Net") moves to dismiss Plaintiffs' Class Action Allegation Complaint ("Complaint") for lack of standing and failure to state a claim, pursuant to Rule 12(b)(1) and Rule 12(b)(6), and for failure to join a necessary party, pursuant to Rule 12(b)(7).[1] This Motion is supported by the following Memorandum of Law and the pleadings and documents on file.

---

[1] This action is not suitable for class certification under Rule 23. Health Net will oppose class certification if this matter is not first dismissed for the reasons stated herein.

Page 1   -   HEALTH NET'S MOTION TO DISMISS CLASS ACTION ALLEGATION
              COMPLAINT

## I.  INTRODUCTION

In 2010, Congress passed the Patient Protection and Affordable Care Act ("ACA"),

which included the following provision effective January 1, 2014:

> A group health plan and a health insurance issuer offering group or individual
> health insurance coverage shall not discriminate with respect to participation
> under the plan or coverage against any health care provider who is acting within
> the scope of that provider's license or certification under applicable State law.
> This section shall not require that a group health plan or health insurance issuer
> contract with any health care provider willing to abide by the terms and
> conditions for participation established by the plan or issuer.  Nothing in this
> section shall be construed as preventing a group health plan, a health insurance
> issuer, or the Secretary from establishing varying reimbursement rates based on
> quality or performance measures.

42 U.S.C. § 300gg-5(a) (hereinafter, "Section 2706").[2]

Seizing on the broadest possible interpretation of Section 2706, four individuals (the

"Individual Plaintiffs") enrolled in Employment Retirement Income Security Act ("ERISA")

health benefit plans ("Plans") administered by Health Net and American Specialty Health Group,

Inc. ("ASH"), and two naturopathic physicians ("Provider Plaintiffs") who provided medical

care under the Plans as "in-network" providers, have filed a class action complaint in which they

assert that Defendants violated Section 2706 by "discriminating" against naturopathic doctors

("NDs").  Although Plaintiffs' theory raises a host of unprecedented issues with potentially vast

impact on the national health care system, the Court ultimately does not need to navigate the

thicket of questions involving Section 2706 (or its intersection with ERISA and health care

markets generally).  Instead, the Complaint should be dismissed for the simple reason that *these*

---

[2] That portion of the ACA amended and restated Section 2706 of the Public Health
Service ("PHS") Act and is commonly referred to as Section 2706.

Page 2   -   HEALTH NET'S MOTION TO DISMISS CLASS ACTION ALLEGATION
              COMPLAINT

Plaintiffs—who do not allege that they are out a single dollar or were denied a single treatment—have no right to bring *these* claims in this or any other court. They simply cannot establish the requisite injury, standing, or legal entitlement to assert their novel theory—which amounts to an abstract interest in the application of federal law—under ERISA or the Declaratory Judgment Act.

Individual Plaintiffs' First Claim, under 29 U.S.C. § 1132(a)(1)(B), fails because Individual Plaintiffs cannot establish that they have suffered any injury in fact sufficient to give them Article III standing. Individual Plaintiffs do not allege that they paid any amounts out of pocket as a result of Defendants' coverage determinations, or that they were unable to obtain treatment or care as a result of these determinations. In addition, Individual Plaintiffs fail to state a claim under Section 1132(a)(1)(B) because they seek relief not authorized under that section—namely, to change the terms of their Plans. As the Supreme Court has made clear, claims under Section 1132(a)(1)(B) are only cognizable when a plaintiff seeks to *enforce* the plan as written, not when the plaintiff seeks to *change* the terms of the plan altogether, as Individual Plaintiffs do here. *See CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1876-77 (2011) (hereinafter "*Cigna*").

Individual Plaintiffs' Second Claim, under 29 U.S.C. § 1132(a)(3), should be dismissed for several reasons. First, as with the First Claim, Individual Plaintiffs lack standing to seek injunctive relief. Thus, just as they have no standing to assert a benefits claim based on the absence of any past harm, Individual Plaintiffs have not alleged any future or threatened harm sufficient to give them a right to an injunction. Second, Individual Plaintiffs cannot establish that they are entitled to any other equitable relief under Section 1132(a)(3), including reformation of the Plans. Reformation requires fraudulent conduct or mistake, neither of which Individual Plaintiffs have alleged here. Third, even if reformation of the Plans was an option,

Individual Plaintiffs have sued the wrong party and failed to join a necessary party to that claim, the Plans and their sponsors.

In any event, Plaintiffs' requested injunctive relief will largely be moot as a result of changes to Oregon state law that go into effect on January 1, 2016.  On that date, Oregon House Bill 3301 ("HB 3301") will require insurers to permit naturopathic physicians to apply for credentialing by the insurer as a primary care provider ("PCP"), provided that the provider meets the insurer's credentialing requirements.  The result for naturopathic physicians who satisfy those requirements would be a removal of the limitations on coverage and care about which Plaintiffs complain.  HB 3301 provides one example of an incremental approach and suggests that determining allowable limits on provider coverage and reimbursement is better treated as a matter of legislative action, and state enforcement and regulation of insurance markets, rather than a federal lawsuit.

Finally, the Third Claim under the Declaratory Judgment Act—which is asserted by all Plaintiffs—must be dismissed because the ACA does not provide a private right of action except pursuant to ERISA.  Plaintiffs cannot manufacture a private right of action via the Declaratory Judgment Act when the substantive statute at issue bars such a lawsuit.

## II. FACTUAL BACKGROUND

### A.    The ACA and Section 2706

Enacted on March 23, 2010, the ACA included legislation amending and restating Section 2706 of the PHS Act, effective January 1, 2014.  42 U.S.C. § 300gg-5.  Section 2706 does not define what it means to "discriminate with respect to participation under the plan or coverage" against a licensed health care provider.  To date, no court has interpreted the statute or

addressed similar claims.[3]  Section 2706 was adopted without meaningful discussion in the

legislative history.[4]

Section 2706 does not provide for any independent private right of action to enforce its

provisions.  Rather, with respect to commercial health insurers, enforcement is limited to the

states and the Secretary of Health and Human Services.  *Id.* § 300gg-22.  Although Section 2706

is one of the ACA provisions that is incorporated into ERISA, 29 U.S.C. § 1185d, that

incorporation also means that it is enforceable only in accordance with the terms of ERISA.

**B.    Oregon HB 3301 (Effective January 1, 2016)**

HB 3301, which was signed into law and will become effective January 1, 2016, provides

that "[a]n insurer shall provide a naturopathic physician the choice of applying to be credentialed

by the insurer as a primary care provider or as a specialty care provider."  HB 3301, § 2(1)

(2015).  The ND "must meet the credentialing requirements as established by the insurer."  *Id.* §

2(2).

The effective result of the bill is to allow NDs to opt into being classified as a PCP under

existing plans under Oregon law, thereby entitling NDs to coverage under the plans consistent

with other PCPs.  Allowing NDs to obtain the PCP credential will require changes in plans and

---

[3] One other case alleging a violation of Section 2706 has been filed and resulted in a reported decision on a motion to remand.  *Dominion Pathology Labs., P.C. v. Anthem Health Plans of Va., Inc.,* No. 2:15cv152, 2015 WL 3830931, at *2 (E.D. Va. June 19, 2015).
[4] Underscoring the complexity of the issues raised by Plaintiffs' claims, the departments charged with enforcing Section 2706 received over 1,500 comments when considering updated guidance on that provision, and they ultimately stated that no enforcement action will be taken against a group health plan under Section 2706 as long as the plan is "using a good faith, reasonable interpretation of the statutory provision."  FAQs About Affordable Care Act Implementation at 4 (May 26, 2015), https://www.cms.gov/CCIIO/Resources/Fact-Sheets-and-FAQs/Downloads/ACA-FAQs-Part-XXVII-MOOP-2706-FINAL.pdf.

Page 5    -    HEALTH NET'S MOTION TO DISMISS CLASS ACTION ALLEGATION
              COMPLAINT

benefit designs by 2016 and will effectively address the discrepancies cited by Plaintiffs in the Complaint.

## C.    The Complaint

### 1.    Plaintiffs' Claims of Unlawful Discrimination and Claims

Individual Plaintiffs, Eileen Fox-Quamme, Lisa Hess, Mary Redfield, and O.W., a minor child, are each participants in various employer-sponsored health benefit plans administered by Health Net and ASH.  (Compl. ¶¶ 4-9.)  Provider Plaintiffs, Leigh Ann Chapman and Jeff Clark, are Oregon licensed naturopathic physicians qualified as "in-network" providers under the Plans. (*Id.* ¶¶ 10-11.)

Plaintiffs allege that the Defendants unlawfully "discriminated" against Oregon- licensed naturopathic physicians because the Plans:

- "contained an annual limit on the number of reimbursable ND office visits" (*id.* ¶ 21);

- imposed unique requirements for medical necessity forms as part of visits to naturopathic physicians (*id.* ¶ 22);

- "capped each participant's annual reimbursable use of ND medical care at $1,500 or less" (*id.* ¶ 23); and

- "did not cover certain types of medical care performed by NDs within the scope of their license, including treatment of various ICD-9 diagnoses, in-office laboratory testing, ordering of out-of-office laboratory tests and diagnostic imaging, and services provided under certain CPT codes" (*id.* ¶ 24).

For each of these allegations, Plaintiffs further allege that the Plans do not treat similarly other medical practitioners providing commensurate services.  (*See id.* ¶¶ 21-24.)  Finally, Plaintiffs allege that "Defendants reimbursed NDs at discriminatory rates" that were "based on credential type rather than objective quality or performance measures."  (*Id.* ¶ 25.)

Page 6    -    HEALTH NET'S MOTION TO DISMISS CLASS ACTION ALLEGATION
                COMPLAINT

Plaintiffs' claims all rely on the premise that Defendants violated Section 2706 and its "mandate for non-discriminatory health care." (*Id.* ¶ 19.) Based on that premise, Plaintiffs' Complaint alleges two claims under ERISA: 29 U.S.C. § 1132(a)(1)(B) (First Claim for Relief) (*id.* ¶¶ 41-45) and 29 U.S.C. § 1132(a)(3) (Second Claim for Relief) (*see id.* ¶¶ 46-51). Plaintiffs' Third Claim for Relief is alleged under the Declaratory Judgment Act (28 U.S.C. § 2201, *et seq.*). (*Id.* ¶¶ 52-55.)

### 2.    Plaintiffs' Allegations of Injury

Plaintiffs make the following allegations regarding the alleged harms they suffered as a result of Defendants' Plans and conduct.

Plaintiffs allege that each of the Individual Plaintiffs, in November and December 2014, "received notice of a denial of coverage for services performed by an ND within the scope of their license" and timely appealed that denial by submitting a grievance in accord with the Plan's grievance and appeals process. (*See id.* ¶¶ 26-29.)

Plaintiffs' allegations admit that, with respect to Redfield's and O.W.'s denials of coverage, Health Net determined that the claim was incorrectly denied and reprocessed the claims for payment to the NDs who provided the relevant services. (*See id.* ¶¶ 31, 33.) Plaintiffs do not allege that Redfield or O.W. suffered any injury whatsoever as a result of any alleged discrimination against NDs. For example, they do not claim they were unable to obtain any services from an ND, and they do not claim that they were required to pay any amounts out of pocket. And Plaintiffs do not allege that the NDs who provided services to Redfield and O.W. were not provided full payment in accord with the terms of the Plans. Instead, Plaintiffs merely allege that Defendants "have not provided full payment to the ND at a *non-discriminatory*

Page 7    -    HEALTH NET'S MOTION TO DISMISS CLASS ACTION ALLEGATION
              COMPLAINT

*reimbursement rate.*" (*See id.* (emphasis added).)  However, Plaintiffs do not allege what rate was paid or why it was discriminatory.

Plaintiffs allege that on March 13, 2015, Health Net issued a final determination informing Fox-Quamme that her claim was "processed in accordance to your plan benefits" and that "preventative care is not a covered benefit" for ND services at this time.  (*Id.* ¶ 30.) Plaintiffs allege that on April 6, 2015, Health Net issued a final determination informing Hess that her claim, while initially improperly denied for an invalid reason, was nevertheless subject to denial for a separate reason—namely, Hess had met her annual benefit maximum.  (*Id.* ¶ 32.) Again, Plaintiffs do not allege that either Fox-Quamme or Hess paid any amounts out of pocket as a result of these determinations, or that Fox-Quamme or Hess was unable to obtain treatment or care as a result of these determinations.  Instead, Plaintiffs merely allege that, in each instance, Defendants "have not provided payment to the ND for medical services provided or otherwise taken action to reverse the denial of coverage."  (*Id.* ¶¶ 30, 32.)

The Complaint contains no particularized allegations relating to the Provider Plaintiffs at all.  Specifically, it contains no allegations of any incidents of discrimination, and no allegations of any specific harm they alleged suffered as a result of any alleged discriminatory conduct under the Plans.

### III.  LEGAL STANDARDS

**A.    Federal Rule of Civil Procedure 12(b)(1)**

"The party asserting federal subject matter jurisdiction bears the burden of proving its existence." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). "'[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or

Page 8    -    HEALTH NET'S MOTION TO DISMISS CLASS ACTION ALLEGATION
                   COMPLAINT

controversy.'" *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (citation omitted; brackets in original); *see also Paulsen v. CNF Inc.*, 559 F.3d 1061, 1072 (9th Cir. 2009) (applying same standards to claims alleged under ERISA).

**B.     Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss, a complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When a complaint is based on facts that are "'merely consistent with'" a defendant's liability, it "'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (citation omitted).

The pleading standard under Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Bald assertions, labels, and legal conclusions are "not entitled to the assumption of truth." *Id.* at 679. Indeed, the Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

**C.     Federal Rule of Civil Procedure 12(b)(7)**

Federal Rule of Civil Procedure 12(b)(7) authorizes a motion to dismiss based on failure to join a necessary party under Rule 19. As is the case in a proceeding under Rule 12(b)(6), in assessing a motion to dismiss under Rule 12(b)(7) and Rule 19, a court accepts well-pleaded allegations in the complaint as true.

## IV. ARGUMENT

**A.     Individual Plaintiffs' First Claim Under Section 502(a)(1)(B) Should Be Dismissed**

The First Claim[5] has two fatal flaws.  First, Individual Plaintiffs lack constitutional standing to obtain relief under this claim.  Second, Individual Plaintiffs fail to state a claim under 29 U.S.C. § 1132(a)(1)(B) (also known as ERISA § 502(a)(1)(B) ("Section 502(a)(1)(B)")) because they seek relief not authorized under that section—namely, to change the terms of their Plans.

### 1.     Individual Plaintiffs Lack Article III Standing

Under Section 502(a)(1)(B), participants and beneficiaries may sue to recover benefits due "under the terms of [the] plan," enforce rights "under the terms of the plan," or clarify rights to future benefits "under the terms of the plan."  However, Plaintiffs' alleged status as ERISA "participants or beneficiaries," alone, does not afford them standing to bring ERISA claims in federal court.  Rather, the Plaintiffs must first satisfy constitutional standing requirements.  *See Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 455 (3d Cir. 2003).

Article III of the Constitution grants federal courts jurisdiction only over "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  To satisfy constitutional standing requirements, a plaintiff "'must show (1) it

---

[5] The First Claim is apparently not brought by the Provider Plaintiffs.  (*See* Compl. ¶¶ 44, 45 (seeking relief only on behalf of the Individual Plaintiffs).)  To the extent Provider Plaintiffs intended to assert this claim, they are not authorized to do so under ERISA and it should be dismissed for lack of standing.  *See infra* at __; *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1289 (9th Cir. 2014) ("non-participant health care provider . . . cannot bring claims for benefits on its own behalf" under ERISA).

Page 10  -   HEALTH NET'S MOTION TO DISMISS CLASS ACTION ALLEGATION
                      COMPLAINT

has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Maya*, 658 F.3d at 1067 (citation omitted).

Plaintiffs' First Claim should be dismissed because each Plaintiff fails to adequately allege injury in a "personal and individual way." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2662 (2013). The Complaint lacks any "personal and individual" allegations detailing the injuries the Individual Plaintiffs claim they suffered. For example, while the Complaint contains allegations relating to the Individual Plaintiffs' appeals of their coverage denials, those allegations conclude by stating that Defendants "have not provided payment to the ND for medical services provided" (Compl. ¶¶ 30, 32) and "have not provided full payment to the ND at a non-discriminatory reimbursement rate" (*id.* ¶¶ 31, 33). Plaintiffs have not alleged that they are "out of pocket" any specific amounts as a result of the Plans' alleged discrimination against NDs. The Complaint also lacks any "personal and individual" allegations showing that any of the Individual Plaintiffs were denied, or unable to obtain, treatment as a result of the Defendants. The Individual Plaintiffs have therefore failed to plead that they suffered any injury, and Plaintiffs lack Article III standing to assert a claim for benefits under Section 502(a)(1)(B).

### 2.    Plaintiffs Fail to State a Claim Under Controlling Supreme Court Case Law

The leading case interpreting relief available under Section 502(a)(1)(B) is *Cigna*, 131 S. Ct. 1866. In *Cigna*, the Court noted that the district court ordered relief under Section 502(a)(1)(B) in two steps. *Id.* at 1876. First, "[i]t ordered the terms of the plan reformed . . . ." *Id.* Second, "[i]t ordered the plan administrator . . . to enforce the plan as reformed." *Id.* After reviewing the pertinent statutory language in Section 502(a)(1)(B), the Court in *Cigna*

Page 11  -  HEALTH NET'S MOTION TO DISMISS CLASS ACTION ALLEGATION
               COMPLAINT

rhetorically asked: "Where does § 502(a)(1)(B) grant a court the power to *change* the terms of the plan as they previously existed? The statutory language speaks of '*enforc[ing]*' the 'terms of the plan,' not of *changing* them." *Id.* at 1876-77 (citation omitted). The Court noted that a trial court is permitted to "look outside the plan's written language in deciding what those terms are, *i.e.*, what the language means," but it "found nothing suggesting that the provision authorizes a court to alter those terms . . . where that change, akin to the reform of a contract, seems less like the simple enforcement of a contract as written and more like an equitable remedy." *Id.* at 1877. The Court accordingly concluded that Section 502(a)(1)(B) did not authorize entry of the relief granted by the district court. *Id.* at 1877-78; *see also Romero v. Allstate Ins. Co.*, 1 F. Supp. 3d 319, 370 (E.D. Pa. 2014) (dismissing Section 502(a)(1)(B) claim that sought a "two-step remedy" of changing the plans and then enforcing the plans as changed).

Plaintiffs' claim under Section 502(a)(1)(B) should be dismissed, in accord with *Cigna*, because the relief Plaintiffs seek is not "the simple enforcement of a contract as written." *Cigna*, 131 S. Ct. at 1877. Plaintiffs do not allege that they were denied any benefits that were owed under the terms of their Plans, nor do they attempt to enforce the terms of the Plans as written, and Plaintiffs do not ask the Court to interpret "what the language means" in the Plans. *See id.* Instead, Plaintiffs allege various ways in which they contend the Plans' terms discriminate against NDs in purported violation of Section 2706. Plaintiffs' requests for relief are dependent upon the Court *changing* the terms of the Plans to administer benefits consistent with Plaintiffs' interpretation of Section 2706, including by awarding compensation to the extent the Plans violated Section 2706 and ordering coverage consistent with Section 2706. (*See* Compl. ¶¶ 41-45; *see also id.* at 12 ("Prayer for Relief").) This relief is "less like the simple enforcement of a contract as written and more like an equitable remedy." *Cigna*, 131 S. Ct. at 1877. Indeed,

Page 12 -    HEALTH NET'S MOTION TO DISMISS CLASS ACTION ALLEGATION
             COMPLAINT

Plaintiffs seek the same type of "two-step" remedy that the Court rejected as available under Section 502(a)(1)(B) in *Cigna*. Plaintiffs are therefore not entitled to their requested relief under Section 502(a)(1)(B) and that claim should be dismissed.

## B.    Individual Plaintiffs' Second Claim Under Section 502(a)(3) Should Be Dismissed

Individual Plaintiffs' Second Claim[6] is alleged under 29 U.S.C. § 1132(a)(3) (also known as ERISA § 502(a)(3) ("Section 502(a)(3)")). (*See* Compl. ¶¶ 46-51.) Section 502(a)(3) provides that: "A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . ." To state a claim under Section 502(a)(3), a plaintiff must show: (1) that he or she has no other adequate remedy under ERISA; and (2) that he or she is seeking purely equitable, not legal, relief. *Variety Corp. v. Howe*, 516 U.S. 489, 515 (1996) ("[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'").

The Section 502(a)(3) claim has three fatal flaws. First, Plaintiffs lack standing to obtain injunctive relief under this claim. Second, although Plaintiffs seek to reform the Plans by changing their requirements in a manner consistent with their interpretation of Section 2706, Plaintiffs have failed to establish that the two grounds for contract reformation—fraud or

---

[6] The Second Claim is apparently not brought by the Provider Plaintiffs. (*See* Compl. ¶¶ 50, 51 (seeking relief only on behalf of the Individual Plaintiffs).) To the extent Provider Plaintiffs intended to assert this claim, they are not authorized to do so under ERISA and it should be dismissed. *See infra* at __; *Spinedex*, 770 F.3d at 1289 ("non-participant health care provider . . . cannot bring claims for benefits on its own behalf" under ERISA).

Page 13  -  HEALTH NET'S MOTION TO DISMISS CLASS ACTION ALLEGATION COMPLAINT

mistake—exist.  Third, Plaintiffs have failed to join an indispensable party to that theory, the

Plans' sponsors.  For each of these reasons, the Second Claim should be dismissed.

### 1.    Plaintiffs Lack Standing to Obtain Injunctive Relief

"To establish Article III standing" sufficient to support injunctive relief, "plaintiff[s] must

show *inter-alia* that [they] face[] imminent injury on account of the defendant's conduct."

*Mayfield v. United States,* 599 F.3d 964, 970 (9th Cir. 2010).  Injunctive relief is available only if

plaintiffs can show that they face a "real or immediate threat" capable of being redressed.  *Id.*

For these purposes, "[p]ast exposure to harmful or illegal conduct" cannot on its own confer

standing, and neither will "speculation" or "subjective apprehension" about future harm.  *Id.*;

*Whitmore v. Arkansas,* 495 U.S. 149, 158 (1990) (future injury must not only be "possible"; it

must be "certainly impending").  In addition, a plaintiff seeking declaratory or injunctive relief

must show that he or she is "'realistically threatened by a repetition of the violation.'"  *Cattie v.*

*Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 951 (S.D. Cal. 2007) (emphasis omitted) (quoting

*Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006)).

Plaintiffs here have failed to plead that they face any imminent injury that would support

standing to seek injunctive relief under Section 502(a)(3).  Plaintiffs have not alleged that they

face a "real or immediate threat" or that they will be unable to obtain benefits as a result of any

future conduct by Defendants, or that Plaintiffs will be out of pocket any costs as a result of such

future conduct.  *See, e.g., Bellanger v. Health Plan of Nev., Inc.,* 814 F. Supp. 914, 917 (D. Nev.

1992) (noting that to state a claim for relief under ERISA "Plaintiff would have to convince this

Court that he is likely to be injured again in the near future, that he would then submit a claim to

Defendant, who would then deny this claim in violation of ERISA, and that this denial of

medical coverage would result in an injury not subject to a remedy at law").  Plaintiffs have

failed to allege any specific allegations of an imminent future harm necessary to obtain relief under this claim, and the claim should be dismissed.

The lack of any threat requiring an injunction is particularly evident given HB 3301. The result of that legislation is that the limitations on coverage and naturopathic care about which Plaintiffs complain likely will be eliminated. This change in state law, and the resulting change in benefits and plans that it will require, further demonstrates that Plaintiffs do not have standing to assert a claim for injunctive relief.

### 2.    Plaintiffs Are Not Entitled to Other Equitable Relief Under Their Second Claim

In *Cigna,* the Court noted that, for purposes of Section 502(a)(3), it has interpreted the term "appropriate equitable relief" to refer to "'"those categories of relief'" that, traditionally speaking (i.e., prior to the merger of law and equity) '"were *typically* available in equity."'" 131 S. Ct. at 1878 (citations omitted). The Court concluded that reformation was a remedy available under the statute, but only in cases of fraud or mistake:

> The power to reform contracts (as contrasted with the power to enforce contracts as written) is a traditional power of an equity court, not a court of law, and was used to prevent fraud. *See Baltzer v. Raleigh & Augusta R. Co.*, 115 U.S. 634, 645 (1885) ("[I]t is well settled that equity would reform the contract, and enforce it, as reformed, if the mistake or fraud were shown"); *Hearne v. Marine Ins. Co.*, 20 Wall. 488, 490, 22 L. Ed. 395 (1874) ("The reformation of written contracts for fraud or mistake is an ordinary head of equity jurisdiction"); *Bradford v. Union Bank of Tenn.*, 13 How. 57, 66, 14 L. Ed. 49 (1852); J. Eaton, *Handbook of Equity Jurisprudence* § 306, p. 618 (1901) (hereinafter Eaton) (courts of common law could only void or enforce, but not reform, a contract); 4 Pomeroy § 1375, at 1000 (reformation "chiefly occasioned by fraud or mistake," which were themselves concerns of equity courts); 1 Story §§ 152–154; *see also* 4 Pomeroy § 1375, at 999 (equity often considered reformation a "preparatory step" that "establishes the real contract").

*Id.* at 1879-80 (brackets in original).

Thus, while equitable reformation may be available under Section 502(a)(3), it requires some level of fraud by one of the parties to the ERISA plan, and it is only appropriate when necessary "to reflect the mutual understanding of the contracting parties where, fraudulent suppressions, omissions, or insertions materially affected the substance of the contract." *Id.* at 1881 (citation, alterations, and internal quotation marks omitted); *id.* at 1884 (Scalia, J., concurring) ("Contract reformation is a standard remedy for altering the terms of a writing that fails to express the agreement of the parties 'owing to the fraud of one of the parties and mistake of the other.'" (citation omitted)).

The Ninth Circuit has been even clearer about the limited availability of reformation: "The power to reform contracts is available only in the event of mistake or fraud." *Gabriel v. Alaska Elec. Pension Fund,* 773 F.3d 945, 955 (9th Cir. 2014); *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1166 (9th Cir. 2012) ("[R]eformation is proper only in cases of fraud and mistake.").[7]

In this case, Individual Plaintiffs' claim under Section 502(a)(3) should be dismissed because they have not alleged any facts necessary to support a reformation claim.  Plaintiffs do not allege that they were defrauded or that there was any mistake that would warrant reforming

---

[7] Oregon law is similarly limited.  *Jensen v. Miller,* 280 Or. 225, 228-29, 570 P.2d 375 (1977) ("[A party] seeking reformation of a written contract must establish, by the appropriate quantum of proof, (1) that there was an antecedent agreement to which the contract can be reformed; (2) that there was a mutual mistake or a unilateral mistake on the part of the party seeking reformation and inequitable conduct on the part of the other party; and (3) that the party seeking reformation was not guilty of gross negligence.").

Page 16  -  HEALTH NET'S MOTION TO DISMISS CLASS ACTION ALLEGATION
           COMPLAINT

the terms of the Plans.[8]  Plaintiffs do not point to any "false or misleading information," which is required to justify the reformation of Plaintiffs' Plan documents.  Instead, Plaintiffs allege various ways in which they contend the Plans' terms discriminate against NDs in purported violation of Section 2706.  (*See* Compl. ¶¶ 21-24.)  Plaintiffs' requests for relief are dependent upon the Court reforming the terms of the Plans to administer benefits consistent with Plaintiffs' interpretation of Section 2706.  (*See id.* ¶¶ 42-45; *see also id.* at 12 ("Prayer for Relief").)  However, these alleged statutory violations do not give rise to a right to reform their Plans under Section 502(a)(3), *Cigna*, and Ninth Circuit authority.

To the extent Plaintiffs seek any other type of alleged equitable relief—such as disgorgement or restitution (*id.* at 13)—those claims fail for reasons similar to those outlined above.  Plaintiffs have not alleged a single fact that would plausibly establish a right to those equitable remedies.  Nor do they have standing to seek that relief for the reasons outlined above.  *See supra* at __; *see also Horvath*, 333 F.3d at 457 (absent injury, plaintiff "lacks standing to seek restitution or disgorgement [under ERISA]").[9]

### 3.    Plaintiffs Failed to Join Necessary Party

Even if Plaintiffs had alleged an adequate factual basis for reforming the Plans—and they have not—they would not be entitled to their requested relief because they have failed to join a necessary party to reform the terms of the Plans:  the Plan sponsors.  Rule 12(b)(7) of the Federal

---

[8] Plaintiffs do not allege any facts in this regard, but it also should be noted that, to the extent Plaintiffs were to attempt to do so, they would have to satisfy Rule 9(b) and plead those facts with particularity.

[9] Plaintiffs also cannot establish a right to equitable restitution, which is available only in limited circumstances.  *See Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002).

Page 17  -   HEALTH NET'S MOTION TO DISMISS CLASS ACTION ALLEGATION
             COMPLAINT

Rules of Civil Procedure requires dismissal of a case for "failure to join a party under Rule 19." According to Rule 19, a party subject to service of process, whose joinder will not deprive the court of subject-matter jurisdiction, "must be joined" if (a) "in that person's absence, the court cannot accord complete relief among the parties," or (b) "that person claims an interest" such that disposing of the action in that person's absence may "impair or impede the person's ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1).

The Ninth Circuit utilizes a two-part test to analyze whether a party is a required party pursuant to Rule 19(a). *Paiute–Shoshone Indians of the Bishop Cmty. of the Bishop Colony v. City of Los Angeles,* 637 F.3d 993, 997 (9th Cir. 2011) (citing *Yellowstone County v. Pease,* 96 F.3d 1169, 1172 (9th Cir. 1996)). The court must first determine whether it "could award complete relief to the parties present without joining the non-party" or if "the non-party has 'a legally protected interest' in th[e] action that would be 'impaired or impeded' by adjudicating the case without it." *Id.* (citations omitted). If either of these questions is answered in the affirmative, the non-party is a required party under Rule 19(a) and the Ninth Circuit turns to the second part of the Rule 19(a) analysis and asks whether the non-party could be feasibly joined. *Id.* at 998.

In this case, Plaintiffs' employers are necessary parties because their presence in this action is essential to afford the existing parties' complete relief and to protect the employers' own interests in the action. The phrase "employee welfare benefit plan" is defined in ERISA to include any "plan, fund, or program" designed to provide "medical, surgical, or hospital care or benefits . . . ." 29 U.S.C. § 1002(1). "An ERISA plan is a contract." *Herzberger v. Standard*

Page 18  -  HEALTH NET'S MOTION TO DISMISS CLASS ACTION ALLEGATION
           COMPLAINT

*Ins. Co.,* 205 F.3d 327, 330 (7th Cir. 2000). And that contract is between the employer as the

plan sponsor and the beneficiaries. *See, e.g., Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 396,

399-400 (6th Cir. 1998) (stating that the plan, under which early retirees of General Motors

Corporation claimed to be entitled to health care benefits for life at no cost, was a

welfare plan regulated by ERISA and that the plan was a bilateral contract between General

Motors and "each early retiree to vest health care benefits at retirement"); *Frank C. Gaides, Inc.*

*v. Provident Life & Accident Ins. Co.*, No. CV-95-1273 (CPS), 1996 WL 497085, at *9

(E.D.N.Y. Aug. 26, 1996) ("The Southern District of New York has recognized that an ERISA

plan represents a contract between the company and its employees.").

In this case, Plaintiffs allege that Health Net is an "Oregon corporation in the business of

providing insurance," and ASH is a "California corporation in the business of administering

health insurance plans." (*See* Compl. ¶¶ 4-5.) Plaintiffs acknowledge that the Plans are

established by their employers, not by Defendants. (*See generally id.* ¶ 35 (seeking to certify a

class comprised of "all enrollees in Defendants' benefit plans *established by an employer*

engaged in commerce ('the Class').") Plaintiffs do not allege that Defendants established or

maintain the Plans or otherwise qualify as Plan sponsors. *See* 29 U.S.C. § 1002(16)(B)

(defining, for ERISA purposes, an employer that establishes or maintains an employee benefit

plan as a plan "sponsor"). The Complaint does not allege that Defendants were responsible for

setting the terms of the Plans or that they would have any authority or capacity to comply with an

order directing amendment of those terms. Nor is there any logical reason to assume that

Defendants would have such control over Plans that are sponsored by separate and independent

corporations.

Page 19 -    HEALTH NET'S MOTION TO DISMISS CLASS ACTION ALLEGATION
             COMPLAINT

Plaintiffs' request for injunctive and equitable relief necessarily includes the amendment and modification of the Plans, which necessarily affects the contractual relationship between Plaintiffs' employers as Plan sponsors and the employees as beneficiaries. *See Curtiss-Wright Corp. v. Schoonejongen,* 514 U.S. 73, 78 (1995) ("Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans."). In effect, Plaintiffs' theory is an attempt to unilaterally change the terms of welfare benefit plans that their employers offer to include different and increased benefits. A judgment requiring the Plans to be changed would amount to reforming a contract to which Plaintiffs' employers are parties. *See Lomayaktewa v. Hathaway,* 520 F.2d 1324, 1325 (9th Cir. 1975) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable."); *see also* 76 C.J.S. *Reformation of Instruments* § 84, Westlaw (database updated June 2015) ("[N]ecessary parties to any action or suit to reform a written contract include all the parties to the instrument."). It could also trigger substantial funding obligations for them. As a result, the only way the claims asserted by Plaintiffs can be adjudicated in an orderly and expeditious manner and complete relief can be provided is if Plaintiffs' employers are parties. For these reasons, they are proper and necessary parties under Rule 19(a).

**C.     Plaintiffs' Third Claim Under the Declaratory Judgment Act Should Be Dismissed**

      **1.     Plaintiffs Fail to State a Claim Under the Declaratory Judgment Act**

Plaintiffs' claim under the Declaratory Judgment Act (28 U.S.C. § 2201) (*see* Compl. ¶¶ 52-55) must be dismissed because the Declaratory Judgment Act cannot be used to manufacture a private right of action where none exists under the substantive statute at issue, here Section 2706.

There is no such thing as a free-standing claim under Section 2706, and no portion of Section 2706 expressly grants a private right of action. *See Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1385 (2015) ("[T]he 'express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'" (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001))); *Dominion Pathology Labs., P.C. v. Anthem Health Plans of Va., Inc.*, No. 2:15cv152, 2015 WL 3830931, at *2 (E.D. Va. June 19, 2015) ("The parties, and the court, agree that § 2706 of the ACA does not create a private right of action."). Rather, enforcement of Section 2706 with respect to insurance issuers is expressly delegated to the states and, ultimately, the Secretary of Health and Human Services. *See* 42 U.S.C. § 300gg-22; *see also Warren Pearl Constr. Corp. v. Guardian Life Ins. Co. of Am.*, 639 F. Supp. 2d 371, 377 (S.D.N.Y. 2009) ("As a result, courts have held that HIPAA [also enforced by 42 U.S.C. § 300gg-22] does not provide for either an express or implied private right of action."). To the extent the ACA is enforceable by private parties, Congress determined that it only may be enforced in accordance with the terms of ERISA. 29 U.S.C. § 1185d.

Given that (1) there is no private right of action to enforce Section 2706 and (2) the exclusive means of bringing an private action is pursuant to 29 U.S.C. § 1132(a), the relevant question is whether the Plaintiffs may nevertheless bring a declaratory judgment claim seeking a declaration that Defendants violated Section 2706. In other words, can private plaintiffs bring a non-ERISA claim—declaratory judgment or otherwise—alleging a violation of Section 2706?

The answer to that question is "no." The Declaratory Judgment Act is procedural only. It creates no substantive rights and "presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960); *Shelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). When the federal statute under which a plaintiff seeks a declaration or other

Page 21  -    HEALTH NET'S MOTION TO DISMISS CLASS ACTION ALLEGATION
             COMPLAINT

relief does not authorize a "judicially remediable right" in favor of the plaintiff, the Declaratory Judgment Act cannot be used to create such a right, and a district court lacks authority to adjudicate such a request. *See Schilling*, 363 U.S. at 677; *C&E Servs., Inc. of Wash. v. Dist. of Columbia Water & Sewer Auth.*, 310 F.3d 197, 201-02 (D.C. Cir. 2002).

In *C&E Services*, for example, the plaintiff sought a declaration that the defendant violated the Service Contract Act ("SCA"), which created no private remedy and required compliance with a statutory scheme for administrative relief. 310 F.3d at 201. The court concluded that a judicial declaration interpreting the statute "would constitute an end-run around Congress's clear intent that the Department of Labor interpret and enforce the SCA in the first instance," and that the Declaratory Judgment Act "does not authorize such a result." *Id.* The D.C. Circuit's analysis and holding is consistent with other courts' conclusions. *Mylan Pharms., Inc. v. Thompson,* 268 F.3d 1323, 1332 (Fed. Cir. 2001) (Declaratory Judgment Act does not authorize a declaratory judgment action for "delisting" under the FDCA when no private right of action for "delisting" exists); *Tex. Med. Ass'n v. Aetna Life Ins. Co.,* 80 F.3d 153, 158-59 (5th Cir. 1996) (Texas Declaratory Judgment Act does not authorize a declaratory judgment action when no private right of action exists); *Johnson v. Parker Hughes Clinics,* No. Civ. 04–4130 PAM/RLE, 2005 WL 102968, at *2 (D. Minn. Jan. 13, 2005) (court lacked subject matter jurisdiction in a declaratory judgment action regarding HIPAA because HIPAA creates no private cause of action).

In this situation, Congress created an elaborate statutory scheme after the most vigorous public policy debate in recent memory. In doing so, Congress defined the entities within the executive branch that would be charged with enforcing the provisions, and provided a limited means—through ERISA—for private parties to bring potential claims for alleged violations of

Page 22 -   HEALTH NET'S MOTION TO DISMISS CLASS ACTION ALLEGATION COMPLAINT

certain provisions of the ACA that were incorporated into ERISA.  29 U.S.C. § 1185d.  Like the

plaintiff in *C&E Services*, Plaintiffs cannot use the Declaratory Judgment Act to seek a private

remedy based on statutes that do not authorize such an action.  In short, Plaintiffs cannot rely on

the Declaratory Judgment Act to obtain a judicially remedial right where none exists under the

statute that they ask the Court to interpret.  *C&E Servs.*, 310 F.3d at 201-02.

      **2.**        **Provider Plaintiffs Lack Statutory Standing to Assert Claims Under ERISA**

      "'ERISA provides for a federal cause of action for civil claims aimed at enforcing the

provisions of an ERISA plan.'"  *Spinedex Physical Therapy USA Inc. v. United Healthcare of*

*Ariz., Inc.,* 770 F.3d 1282, 1288 (9th Cir. 2014) (citation omitted).  However, to have standing to

state a claim under ERISA, a plaintiff must qualify under one of ERISA's "'specific civil

enforcement provisions [29 U.S.C. § 1132(a)(1)-(9)], each of which details who may bring suit

and what remedies are available.'"  *Id.* (citation omitted).  Section 1132(a) "identifies only plan

participants, beneficiaries, fiduciaries, and the Secretary of Labor as '[p]ersons empowered to

bring a civil action.'"  *Id.* at 1288-89 (citation omitted; brackets in original).  Accordingly, a

"non-participant health care provider . . . cannot bring claims for benefits on its own behalf"

under ERISA.  *Id.* at 1289.

      Pursuant to *Spinedex,* the Provider Plaintiffs in this action lack standing to bring any

claim under Section 1132(a).  For this additional reason, their Third Claim—the only claim

asserted by the Provider Plaintiffs—is doubly flawed.  They are not only seeking to evade the

jurisdictional and procedural limitations of the Declaratory Judgment Act, but they are seeking to

create statutory standing under ERISA where none exists.

### 3.   Provider Plaintiffs' Allegations Are Insufficient to State a Claim

Even if the issues identified above were not fatal—and they clearly are—the Provider Plaintiffs cannot state a claim for a host of other reasons.  For example, although this is a class action complaint on behalf of a putative class of plan beneficiaries, Provider Plaintiffs are not part of the class, nor do they allege any class claims.  In addition, the Complaint contains no factual allegations applicable to the Provider Plaintiffs other than their names and the fact that they provided naturopathic care in Health Net's network.  (*See* Compl. ¶¶ 10-11.)  Provider Plaintiffs do not allege what injury they suffered, facts establishing Article III standing, or how they satisfy the substantive elements of any claim.  For these additional reasons, Provider Plaintiffs' claims should be dismissed.

## V.  CONCLUSION

For the reasons above, Health Net respectfully requests that this Court grant its Motion to Dismiss.

DATED:  September 2, 2015.          STOEL RIVES LLP


    /s/ Brad S. Daniels
Stevan D. Phillips, Pro Hac Vice
Brad S. Daniels, OSB No. 025178
Reed W. Morgan, OSB No. 140664
stevan.phillips@stoel.com
brad.daniels@stoel.com
reed.morgan@stoel.com
STOEL RIVES LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR  97204
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480
    Attorneys for Defendant
    Health Net Health Plan of Oregon, Inc.


Page 24  -   HEALTH NET'S MOTION TO DISMISS CLASS ACTION ALLEGATION
              COMPLAINT

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2015, I filed a copy of foregoing document with the Clerk of the Court for the United States District Court– District of Oregon by using the CM/ECF system. Participants in this Case No. 3:15-cv-01248-BR who are registered CM/ECF users will be served by the CM/ECF system.

☐   mailing with postage prepaid

☐   overnight delivery

☐   email

☒   notice of electronic filing using the CM/ECF system

Thomas K. Doyle
doylet@bennetthartman.com
Richard B. Myers
myersr@bennetthartman.com
Bennett, Hartman, Morris & Kaplan, LLP
210 SW Morrison Street, Suite 500
Portland, Oregon 97204-3149
Attorneys for Plaintiffs

DATED:  September 2, 2015.

STOEL RIVES LLP

/s/ Brad S. Daniels
Stevan D. Phillips, Pro Hac Vice
Brad S. Daniels, OSB No. 025178
Reed W. Morgan, OSB No. 140664
stevan.phillips@stoel.com
brad.daniels@stoel.com
reed.morgan@stoel.com
STOEL RIVES LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR  97204
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

Attorneys for Defendant
Health Net Health Plan of Oregon, Inc.

Page 1   -   HEALTH NET'S MOTION TO DISMISS CLASS ACTION ALLEGATION
            COMPLAINT